Curry vs. The Chicago & Northwestern Railway Co.

CURRY VS. THE CHICAGO & NORTHWESTERN RAILWAY COM-
PANY.

RAILROADS: FENCES: CONTRIBUTORY NEGLIGENCE. *(1) Statutes as to liability of railroad companies for injuries to animals from failure to fence, held cumulative. (2) Contributory negligence a defense in all such cases. (3, 4) When question of plaintiff's negligence for the jury.*

1. Secs. 30 and 31, ch. 119 of 1872 (requiring railroads to be fenced, and declaring the liabilities of companies for injuries to domestic animals occasioned by failure to fence), are not repealed or modified by ch. 248 of 1875; but the provisions of the latter are *cumulative* to those of the former.

2. In an action against a railroad company for injury occasioned by failure either to *erect* or to *maintain* fences on the line of its road, as in other actions for negligence, contributory negligence of the plaintiff is a defense. The cases in this court on the subject reviewed.

3. In such an action, for injury to a domestic animal, the mere fact that the animal was a trespasser on defendant's road, or that it passed thereon from land not belonging to the plaintiff, will not defeat a recovery.

4. Plaintiff, living about three-fourths of a mile from defendant's track, which he knew to be unfenced, permitted his cow to pasture, in summer (presumably with other cattle), on a large tract of uninclosed grass land,

extending from the neighborhood of his residence to the track; and she passed upon the track from said land, and was injured. *Held*, that upon these facts the question of contributory negligence, being open to doubt and debate, was *for the jury*. *Lawrence v. Railway Co.*, 42 Wis., 322, distinguished.

APPEAL from the Circuit Court for *Sauk* County.

Action for the value of a cow alleged to have strayed upon defendant's railroad at a point where the same had never been fenced, and to have been there killed by a train, without fault on plaintiff's part. Answer, a general denial, and an averment of contributory negligence.

On the trial, it was stipulated that "plaintiff lived about three-fourths of a mile from Ableman's station [a station on defendant's road], and about the same distance from the place where the cow was injured;" and that "there were about 300 or 400 acres of uninclosed lands about the place of injury and the station." Plaintiff admitted that his cow was running at large on the commons or uninclosed lands and public highway near Ableman's station for the purpose of pasturing; that it was his common practice to allow her to run at large for that purpose; and that defendant was guilty of no other negligence than its failure to fence. Defendant admitted that its road had been in operation for five years at the place where the injury occurred; that the track at that place "was not fenced as the statute directs;" that the premises there were not part of the depot grounds, but were "open common, open to the public highway;" that the cow was killed by a train on its road; and that she was worth the amount claimed by the plaintiff as damages.

Some evidence that plaintiff had no pasture lands on his farm, and no means of pasturing his cow except on the uninclosed lands in the neighborhood, and that "the 200 or 300 acres admitted to be uninclosed" were "used for pasturing purposes by people in the neighborhood," was ruled out on defendant's objection; plaintiff admitting that he "could not

show any understanding, more than custom, by which he was pasturing there." There was no other evidence.

Defendant's motion for a nonsuit was denied. The judge refused to instruct the jury at defendant's request, that "the fact that plaintiff turned the cow out to pasture in the public highway and uninclosed lands through which defendant's railway runs, about three-fourths of a mile from his residence, knowing that the railway was unfenced, was gross negligence on his part." He instructed the jury, in .substance, that if the cow strayed upon defendant's road, at a point where the company was bound by statute to maintain a fence, and such fence would have prevented her from going upon the road, defendant was liable, unless plaintiff was guilty of a want of ordinary care in permitting her to be upon the lands from which she passed upon the track; and that it was for them to determine whether, under all the circumstances of this case, he was guilty of such want of ordinary care.

The plaintiff had a verdict and judgment; and defendant appealed.

For the appellant, a brief was filed by *Smith & Lamb*, and the cause was argued orally by *Mr. Lamb*. They contended, 1. That, as the facts were undisputed, it was the duty of the court to declare the law upon them. *Dascomb v. Railway Co.*, 27 Barb., 227; *Toledo, etc., Railway Co. v. Goddard*, 25 Ind., 197; *Artz v. Railroad Co.*, 34 Iowa, 160; *Rothe v. Railroad Co.*, 21 Wis., 256; *Langhoff v. Railway Co.*, 23 id., 43; *Nicks v. Marshall*, 24 id., 139; *Delaney v. Railway Co.*, 33 id., 67.  2. That the owner of domestic animals who turns them into the highway to pasture, violates the law, and the animals are trespassers while in the highway, or when they pass on adjoining land, even if unfenced *(Bush v. Brainard*, 1 Cow., 78, note a; *Rust v. Low*, 6 Mass., 94; *Stackpoole v. Healy*, 16 Mass., 33; *Wells v. Howell*, 19 Johns., 385; *Holloday v. Marsh*, 3 Wend., 142; 3 Black. Com., 210; 3 Kent's Com., 432; *Harrison v. Brown*, 5 Wis., 27–31);

and that permitting cattle to be at large upon or in the vicinity of a railroad, or to range in places where it is even remotely probable that they will stroll upon the track, is grossly and culpably negligent, on account of the danger to which it exposes the life and limbs of passengers and the persons of employees, and such negligence is in its nature continuing as well as gross. *Stucke v. M. & M. Railroad Co.*, 9 Wis., 213; *C. & N. W. Railway Co. v. Goss*, 17 id., 433. 3. That contributory negligence of the plaintiff is a defense in such a case; that the liability declared by the statute (sec. 1, ch. 268 of 1860, reënacted by sec. 30, ch. 119 of 1872) is merely that which the courts would enforce as a sequence of the *duty* imposed, and in such cases contributory negligence defeats a recovery *(Blyth v. Topham*, Cro. Jac., 158; *Bush v. Brainard*, 1 Cow., 78; *Stucke v. Railroad Co.*, 9 Wis., 216); and that this view is sustained by the language of the statute, which makes the company liable only for injuries *occasioned* by the failure to fence. *Ricketts v. Railway Co.*, 12 C. B., 160; *Manchester, etc., R'y Co. v. Wallis*, 14 id., 213; *Ellis v. Railway Co.*, 2 H. & N., 424; *Perkins v. Railroad Co.*, 29 Me., 307; *Cornwall v. Railroad*, 28 N. H., 161; *Chapin v. Railroad*, 39 id., 53, 564; *Mayberry v. Railroad*, 47 id., 391; *Trow v. Railroad Co.*, 24 Vt., 487; *Jackson v. Railroad Co.*, 25 id., 150; *Morse v. Railroad Co.*, 27 id., 49; *Bemis v. Railroad Co.*, 42 id., 375; *Eames v. Railway Co.*, 98 Mass., 566; *Ross v. Railroad Co.*, 6 Allen, 87; *Ingersoll v. Railroad Co.*, 8 id., 440; *P., Ft. W. & Ch. R'y Co. v. Methven*, 21 Ohio St., 586; *C. & A. Railroad Co. v. Fears*, 53 Ill., 115; *Berry v. Railway Co.* (in supreme court of Missouri), 5 Cent. L. J., 117; *Leavenworth, etc., Railroad Co. v. Rice*, 10 Kan., 426; *Walsh v. Railroad Co.*, 8 Nev., 110; *Keech v. Railroad Co.*, 17 Md., 32; *Macon & W. Railroad Co. v. Davis*, 13 Ga., 68; *M. & C. Railroad Co. v. Bibb*, 37 Ala., 699. By reason of the peculiar language of the New York act of 1850 (ch. 140, sec. 44), requiring railway companies to fence their tracks, it

was construed in *Corwin v. Railroad Co.*, 13 N. Y., 42, to create an absolute liability. But in construing other provisions of the same act, imposing duties on such companies and making them liable for injuries sustained "by reason of" their neglecting such duties, the courts of that state uphold the rule here contended for. *Dascomb v. Railway Co.*, 27 Barb., 227; *Wilcox v. Railroad Co.*, 39 N. Y., 364; *Steves v. Railroad Co.*, 18 id., 422; *Havens v. Railway Co.*, 41 id., 296; *Baxter v. Railroad Co.*, id., 502. So in Indiana, while, by a peculiar statute, railway companies are in effect made absolutely liable for injuries to cattle, yet, where statutes with such qualifying language as that found in ours are passed upon, it is held that plaintiff's negligence defeats a recovery. *T. & W. R'y Co. v. Goddard*, 25 Ind., 185, and cases there cited. In Iowa, cattle are free commoners, and decisions there as to fences are inapplicable. *Artz v. Railroad Co.*, 34 Iowa, 160, and cases there cited. As to the decisions in this state, counsel both criticised and distinguished *McCull v. Chamberlain*, 13 Wis., 637, and insisted that, if the statutes of 1860 and 1872 are regarded as equivalent to that of 1856 there considered, that decision has been virtually overruled by the later cases, reference being had to the fact that the duty of *maintaining* the fence is as absolute by the statute as the duty of *erecting* it, and the liability for failure the same. *C. & N. W. R'y Co. v. Goss*, 17 Wis., 428; *Galpin v. Railway Co.*, 19 id., 604; *Fisher v. F. L. & T. Co.*, 21 id., 73–76; *Pitzner v. Shinnick*, 39 id., 129; *Jones v. Railroad Co.*, 42 id., 306; *Lawrence v. Railway Co.*, id., 322. 4. That ch. 248 of 1875 has modified sec. 30, ch. 119 of 1872, so as to require railroad companies to fence their tracks only where they run through *inclosed* land, and defendant was not under any obligation to fence where the injury occurred in this case.

*J. W .Lusk*, for the respondent, contended that the court below was right in refusing to hold, as matter of *law*, that plaintiff was guilty of negligence which would defeat his re-

covery. *McCall v. Chamberlain*, 13 Wis., 637. It is settled in the law of this state, that slight negligence of the plaintiff will not defeat a recovery when defendant's negligence has been gross, or even ordinary. *Dreher v. Fitchburg*, 22 Wis., 675; *Ward v. Railway Co.*, 29 id., 151; *Houfe v. Fulton*, id., 302; *Hammond v. Mukwa*, 40 id., 35; *Griffin v. Willow*, *ante*, p. 509. In support of the view that plaintiff's cow, while pasturing upon uninclosed land, was not trespassing, counsel cited *Waters v. Moss*, 12 Cal., 535; 1 Cowen's Treatise, 3d ed., 409. He also distinguished *C. & N. W. Railway Co. v. Goss*, 17 Wis., 428, and *Galpin v. Railway Co.*, 19 id., 604, from the present case, and cited *Brown v. Railway Co.*, 21 Wis., 39; *Sika v. Railway Co.*, id., 370; and *Schmidt v. Railway Co.*, 23 id., 193, as holding that the liability of a railroad company in such cases is absolute.

RYAN, C. J. I. Ch. 248 of 1875 cannot be taken to repeal or modify secs. 30 and 31 of ch. 119 of 1872.

"This is a question of constructive repeal. In *Attorney General v. Brown*, 1 Wis., 513, this court adopted the uniform rule governing such cases. If there be two affirmative statutes upon the same subject, one does not repeal the other, if both may consist together; and we ought to seek for such a construction as will reconcile them." .... *Attorney General v. Railroad Companies*, 35 Wis., 425.

The two statutes here in question may not only stand together, but the provisions of the later were obviously designed to be cumulative to the provisions of the earlier.

Neither do they fall within the rule, that a later statute revising the subject of an earlier statute, works a repeal of the latter. *Lewis v. Stout*, 22 Wis., 234; *Burlander v. Railroad Co.*, 26 id., 76; *Simmons v. Bradley*, 27 id., 689; *Moore v. Railway Co.*, 34 id., 173; *Olson v. Railway Co.*, 36 id., 383. For the chapter of 1875 does not attempt to revise the provisions of 1872; does not purport to cover the whole

ground; and would obviously be a very defective statute by itself.

The sections of the general railroad act of 1872 require railroads to be fenced, and declare the liability of the companies for injury to domestic animals occasioned by failure to fence. When such fences are made and maintained, these sections declare that the companies shall be liable only for willful or otherwise negligent injury. They proceed to declare the liability of individuals for placing domestic animals on railroads, and make other provisions tending to prevent accidents on railroads.

The chapter of 1875 requires railroads, two years or more in operation, to be fenced through inclosed lands; and, upon failure of the company, authorizes occupants of inclosed lands to give notice to the companies to fence; and, upon continued failure, gives an action to occupants against the companies for a penalty for every train passing through their inclosed lands.

Manifestly, these penalties given upon default to fence, without consequent injury, are not a substitute for the liability for actual injuries declared by the sections of 1872. The penalties are a distinct and independent remedy to force railroad companies to fence against danger of accident. The action given by the statute of 1875 goes upon an essentially different ground from the action given by the statute of 1872. The one is penal, by way of coercion; the other is remedial for actual damages sustained. And, under the conditions given in the act of 1875, actions for penalties for not fencing, and actions for damages occasioned by failure to fence, would lie together; penalties recovered not going to compensation for damages sustained, and damages recovered for actual injuries not satisfying penalties incurred.

The first section of the chapter of 1875 requiring railroads in operation for two years to be fenced through inclosed lands, is plainly intended to state the conditions under which notice may be given under the second section. The two sec-

tions are clearly dependent. And the statement of the conditions under which the notice may be given and the penalty recovered, were plainly not designed, and cannot be held, to change the duty or liability of railroad companies declared by the statute of 1872. The latter is the general statute, governing all railroads, always, under all conditions. The former is a particular statute, applying to particular railroads, under particular conditions; and so applying as not to suspend or interfere with any provision of the general statute, but giving additional remedies of its own, under particular conditions, in aid of the provisions of the general statute.

It is needless to point out the essential details of the general statute which the particular statute does not attempt to cover, because it was not meant for a revising, but only for a cumulative, statute.

This case is therefore to be determined under the provisions of the general railroad act.

II. Assuming the appellant's duty to have fenced its road at the *locus in quo*, the respondent's right to recover was put, upon the trial below, upon the question of his contributory negligence. And the first question to be determined here is, whether contributory negligence of a plaintiff enters into the defense, in an action against a railroad company for injury to domestic animals occasioned by total failure to fence the road.

It has been generally understood by the profession, for years past, that this court held the liability of railroad companies in that case to be absolute. *McCall v. Chamberlain*, 13 Wis., 637, has, it is believed, been generally credited with the establishment of the rule. But a critical examination of the late Mr. Justice PAINE's opinion in that case does not appear to warrant that view. Doubtless there are things said in the case, *arguendo*, appearing to tend that way. But the question on which the opinion turns is, whether the mere fact that the animals were trespassers, would defeat the action. Of

course all animals upon a railroad, except at legal crossings or by license, are trespassers. And the mere fact of trespass in such a case has rarely, if ever, been held to excuse injury occasioned by negligence of the railroad company, however the negligence may arise. Certainly not in this court. *Stucke v. Railroad Co.*, 9 Wis., 202; *C. & N. W. R'y Co. v. Goss*, 17 id., 428. The trespass may come with or without negligence of the owner of the animal trespassing. The question of contributory negligence is therefore quite different from the question of trespass. And so contributory negligence of the plaintiff is not only not discussed, but not mentioned, in *McCall v. Chamberlain*.

It has perhaps been sometimes supposed that the same learned and lamented judge affirmed the rule of absolute liability for failure to fence, in his opinion in *Antisdel v. Railway Co.*, 26 Wis., 145. That would be a great mistake. The question of contributory negligence is not considered in the opinion. It is very significant, however, that in that case, which turned upon negligence of the railroad company in not maintaining its fence, the charge of the court below distinctly submitted to the jury the question of contributory negligence, as a defense to the action. This appears in the record, though not in the report. There is no doubt expressed in the opinion of the accuracy of the charge; and this silence may have some effect in the construction of the opinion. It is held in that case that the statute requiring railroad companies to maintain fences, though absolute in terms, does not impose impossibilities upon railroad companies; but only holds them to a high degree of diligence. There are phrases in the opinion which, like some in *McCall v. Chamberlain*, recognize an absolute liability for not building fences. But the opinion seems to disclose the sense in which that term is used. The duty of railroad companies to fence their roads is declared to be the same as the duty of towns to make their highways sufficient, and both are said to be absolute in terms by statute. The liability in both

cases is said to be the same, and alike absolute in terms by statute. This is said of the duty *in principio*, and of the failure to perform it. So the opinion holds of the duty to maintain, and of the liability for not maintaining. The duty of a railroad company to maintain its fences, once built, is declared to be the same as the duty of a town to keep its highways sufficient, once made so; and both are said to be absolute in terms by statute. The liability in both cases is said to be the same, and alike absolute in terms by statute.

This appears to be an accurate statement of the law. For the statutes governing railroad companies and towns, and declaring their liability for failure of duty, in these respects, are alike absolute. And they do not distinguish between the duty of railroad companies to build and their duty to maintain fences, or between their liability for failure to build and for failure to maintain; do not distinguish between the duty of towns to make their highways sufficient, and their duty to keep them sufficient, or between their liability for failure to make them and for failure to keep them so. This appears to be held in all the cases. And when Mr. Justice PAINE says of one of these duties, that it holds railway companies, not to an absolute duty under all conditions, but only to a high degree of diligence, his opinion appears not only to imply the application of that rule to all of those duties, but also to imply the application of the rule of contributory negligence to cases going upon failure to perform any of them. For the opinion appears to put the right of action, as it undoubtedly is, as for negligence. And the rule is universal that, in actions for injury by negligence, contributory negligence sufficient in degree will defeat them.

The comparison of the duties and liabilities of railroad companies and towns, in these respects, is a happy one. And yet no case is remembered, in which this court has distinguished between the liability of a town for injury caused by a highway never worked and defective *ab initio*, and by a highway once

sufficient and afterward becoming defective, except upon the mere question of notice. And that is really a distinction without a difference; for a town is presumed to have notice of the highways which it has failed to work. And no case is remembered in which this court has held that contributory negligence would not defeat such an action against a town, going either upon original or upon subsequent defect of a highway. Actions for negligence impute the injury to the negligence of the defendant alone. When the negligence of both parties coöperates alike in producing the injury, the action does not lie. *Hoyt v. Hudson*, 41 Wis., 105; *Prideaux v. Mineral Point, ante*, p. 513.

The views expressed in *Antisdel v. Railway Co.* appear to be quite inconsisent with the rule previously affirmed in *Brown v. Railway Co.* and *Sika v. Railway Co.*, cited *infra*.

The absolute liability of railroad companies for injuries on unfenced roads, without reference to contributory negligence, is not held in *Bennett v. Railway Co.*, 19 Wis., 145. The question was not in that case, where the animal appears to have gone upon the track from depot grounds not required to be fenced, by negligence of the owner. It is said indeed, in the opinion of Mr. Justice COLE, that if the animal had strayed upon the road from a place which the statute required to be fenced, and which the company had not fenced, the company would be liable by reason of that neglect, without reference to negligence of the train which caused the injury; citing *McCall v. Chamberlain*. But that signifies only that failure to fence is negligence, and the question of contributory negligence, in such a case, is not considered or mentioned.

*Blair v. Railway Co.*, 20 Wis., 254, does not pass upon the question, but strongly suggests that contributory negligence would defeat an action for injury caused by the company's failure to fence. That was an action by a passenger against the company as a common carrier of passengers, for injuries received in consequence of the failure to fence. Of course a

more stringent rule would apply there, than in case of injury to trespassing animals. There was no pretense of contributory negligence. But the chief justice emphasizes the fact that there was none, as if he thought that contributory negligence would defeat the action; adding that "the injury resulted solely and exclusively from the failure of the company to perform a positive and unqualified duty imposed by statute." This is the true view of an action for negligence, going upon the sole negligence of the defendant, without contributory negligence of the plaintiff.

So far it appears to be clear that the rule of absolute liability had not been adopted; and that intimations in favor of such a rule were apparently neutralized by intimations against it. But in *Brown v. Railway Co.*, 21 Wis., 39, the rule of absolute liability was distinctly affirmed. The refusal of the circuit judge to instruct the jury that contributory negligence of the plaintiff would excuse the defendant, was expressly upheld. The opinion of the chief justice on the point is very brief; hardly discussing the question; not citing an authority in favor of the rule; appearing rather to take it for granted. The case appears to hold the statutory liability absolute, however gross contributory negligence might be. It seems to have been overlooked that the absolute liability of the statute is for damages *occasioned* by the failure to erect and maintain fences; that is, occasioned by that only. The word "occasioned" was apparently used in one sense of "caused;" and accurately used. Dr. Johnson's first definition of the verb, to occasion, is, to cause casually; his second, simply, to cause. Dr. Webster's is not substantially different: to give occasion to, to cause incidentally, to cause. Mr. Crabb appears to give the like construction to the word: "what is caused seems to follow naturally; what is occasioned follows incidentally." Of course, the want of a fence cannot, of itself, cause injury, but it gives occasion to injury; causes it incidentally. The want of a sufficient fence gives occasion to an animal to go

upon the track, gives occasion to injury there; but negligence of the owner may contribute to the occasion. So it is, perhaps, in actions for negligence against municipal corporations, in suffering their highways to be defective. Defective highways cannot, of themselves, cause injury, but they give occasion of injury to those passing over them. And it is difficult to perceive any distinction, in principle, in applying the rule of contributory negligence, to a case where the defendant's negligence is the direct cause of injury, and to a case where th. defendant's negligence only gives occasion to injury. The profound deference which all owe to his great learning and ability as a jurist, suggests the belief that the chief justice's opinion in *Brown v. Railway Co.*, and the judgment in the case, did not proceed upon sufficient consideration.

It may be remarked in passing, that the chief justice's comments on *Hance v. Railroad Co.*, 26 N. Y., 428, appear to be not altogether consistent with the judgment in *Dunnigan v. Railway Co.*, 18 Wis., 28. The latter case, by the way, clearly recognizes the application of the rule of contributory negligence to an action for failure to maintain cattle guards, fairly implying its application to actions for any failure under the statute.

The rule is reasserted at the next term in *Sika v. Railway Co.*, 21 Wis., 370; but it is asserted only, not considered. This case is noticeable only for the chief justice's distinct recognition that the action for injuries occasioned by failure to fence, is an action for negligence; which, in principle, appears to give away the rule of absolute liability, independent of contributory negligence.

There is a sentence, purely *obiter*, in Mr. Justice COLE's opinion in *Schmidt v. Railway Co.*, 23 Wis., 186, suggesting that, in case of injury to a domestic animal, " by the failure to erect the fence, the liability of the company would be clear and absolute, regardless of the question whether the owner had been guilty of negligence." This is a very broad reassertion

of the rule of *Brown v. Railway Co.*, but the rule was not involved in the case. The action was for injury to an infant, who strayed upon the road from adjoining premises unfenced. The case turned upon the contributory negligence of the child; and it was held that it was not guilty of such negligence as would defeat the action. And in commenting on the question, the humanity of the learned judge suggests the comparison between liability for injury to human beings and liability for injury to brute creatures. The rule in *Brown v. Railway Co.* was evidently more in the mind of the judge, than the statute on which the rule ought to rest. It was rather an allusion than a *dictum;* wholly irrelevant to the case, and therefore of no weight.

In *Laude v. Railway Co.*, 33 Wis., 640, the liability of the railroad company turned upon its having permitted a gate in the fence to remain open for a long time. That was of course equivalent to a defective fence, to want of fence *pro tanto*. It is said in the opinion in that case, that the court below was right in assuming that there was no evidence of contributory negligence to go to the jury. This is a singular mistake. It is said indeed of particular circumstances which might imply the plaintiff's negligence. But no particular instruction was asked in reference to those circumstances. And the charge of the court below expressly submitted to the jury the questions of the defendant's negligence and of the plaintiff's contributory negligence; expressly instructed the jury, in terms broad enough to include any negligence of the plaintiff, that his contributory negligence would defeat the action. The charge appears to have followed closely the language of the opinion in *Antisdel v. Railway Co.*, evidently fresh in the mind of the learned counsel who drew the instructions, probably before the learned circuit judge when he gave them. The charge declares the liability for not fencing to be absolute, where there is no contributory negligence; holds railroad companies to a high degree of diligence in maintaining their

fences; and adopts Mr. Justice PAINE's precise words in stating that the diligence required of them is a qualification of the absolute liability in terms of the statute. There is indeed one sentence in the charge which appears to take the liability as absolute. But this is to be read in the light of the whole charge, which could leave the jury in no doubt that contributory negligence would defeat the action, and that the question was submitted to them. The charge was discussed at some length, and approved by this court. The chief justice discusses the negligence of the defendant and the contributory negligence imputed to the plaintiff, and upholds the judgment on both questions; apparently ignoring the rule of absolute liability, established some six or seven years before in *Brown v. Railway Co.* and *Sika v. Railway Co.* There is, indeed, one remark, not very precisely expressed, approving the isolated sentence of the charge already noticed, which has the look of favoring the rule of absolute liability. But the comment on this sentence in the charge, like the sentence itself, appears to be qualified by the quotation of the general charge submitting the question of contributory negligence to the jury. It is not to be overlooked that *Antisdel v. Railway Co.* was decided several years after *Brown v. Railway Co.* and *Sika v. Railway Co.* And *Laude v. Railway Co.* may bear the construction of having regarded the cases in 21 Wis., affirming the doctrine of absolute liability with or without contributory negligence, as virtually overruled by the doctrine of the case in 26 Wis. If this view were not then in the mind of the court, all those cases seem to have been overlooked; and *Laude v. Railway Co.*, as well as *Antisdel v. Railway Co.*, appear to indicate an unconscious return to sounder views of the statutory liability for not erecting or maintaining railroad fences.

This doubtful state of the law was certainly unsatisfactory, as appears to have been first perceived in *Pitzner v. Shinnick,* 39 Wis., 129. That case involved negligence in leaving open

a gate in a railroad fence, and the question of absolute or qualified liability for it. The court held the liability to be qualified, and that contributory negligence would be a defense. *McCall v. Chamberlain, Antisdel v. Railway Co.*, and *Laude v. Railway Co.*, are reviewed to some extent in the opinion. The rule of absolute liability is criticised with some emphasis. Its inconsistency with the rule of qualified liability only, under statutes equally peremptory, limiting railroad speed in cities and villages, and prescribing the liability of towns for highways, is pointed out. The rule of absolute liability for not maintaining fences is expressly overruled. The rule of absolute liability for not fencing is neither affirmed nor overruled, as not being in the case; but a strong intimation is given that it could not be upheld.

Then come the cases of *Jones v. Railroad Co.*, 42 Wis., 306, and *Lawrence v. Railway Co.*, id., 322, considered and decided together. The former of these cases turns upon a similar question to that in *Pitzner v. Shinnick*, and affirms that case. The latter also involved, to some extent, liability for not maintaining fences, and the question whether contributory negligence would defeat an action for failure to maintain them. The court held that it would; and used this language on the general question:

" It must be confessed that there is some discrepancy in the cases in this court, construing and enforcing the liability of railroad companies upon failure of duties imposed by statute. In the case of *Jones v. S. & F. R. R. Co.*, considered and decided at the same time as this, notwithstanding some things said or ruled in *McCall v. Chamberlain*, 13 Wis., 637, *Brown v. M. & P. Railway Co.*, 21 id., 39, *Laude v. C. & N. W. Railway Co.*, 33 id., 640, and perhaps other cases, we hold that, while we are not now prepared to say whether or not contributory negligence would be a defense to an action for injury arising from the failure of a railroad company to construct. a fence as required by the statute, contributory negligence of

the plaintiff may defeat an action for injury arising from failure of a railroad company to maintain in repair such fence, once built. The principles on which numerous cases in this court rest, admitting contributory negligence as a defense in actions against railroad companies, for injuries arising from unlawful speed of trains within corporate limits, appear certainly to sanction the application of the same rule to the latter, if not to the former class of cases, under the statute requiring railroads to be fenced. The question will be fully considered in *Jones v. S. & F. Railroad Co.*, and need not be further discussed here."

These are the cases on the subject. There may possibly be others bearing directly on the question, though it is believed not. If there are not, this review seems to suggest a conjecture that the court rather happened upon the rule of absolute liability, than adopted it upon consideration. There does not appear to be anything in the previous cases in the court to support its summary adoption in *Brown v. Railway Co.* It appears to have been followed only in *Sika v. Railway Co.* And the doctrine appears to be afterwards discredited, perhaps forgotten, in *Antisdel v. Railway Co.*, if not in *Laude v. Railway Co.* The last three cases, *Pitzner v. Shinnick*, *Jones v. Railroad Co.* and *Lawrence v. Railway Co.*, expressly overturn one-half of the rule, the half of it which was directly in question in *Brown v. Railway Co.* and *Sika v. Railway Co.*

Doubtless the statute might have prescribed a rule of absolute liability in the way of penalty. But the wisdom of such a rule would be more than doubtful. Be that as it may, it is the duty of the court to interpret the statute as it is written. And here it may be proper to remark that the statute was not taken from New York, and is essentially different from the statute there, to which construction is given in *Corwin v. Railroad Co.*, 13 N. Y., 42, and other cases. The statute there provides that until a railroad company shall have built its fences, it shall be liable for all damages to animals on the

track; not for damages occasioned by the failure to fence. The essential difference between that statute and the statute here, is too obvious for discussion. It is not for this court to say whether the courts of that state, or of other states having essentially different statutes, have given proper construction to them. But it is the duty of this court to give to the statute of this state a just and reasonable construction upon its own letter and spirit. It has often been said in this court, and it is quite apparent, that the statute here was designed to protect trains on railroads at least as much as domestic animals straying upon them. Human life is somewhat more regarded than brute life. Cattle are part of the wealth of the state; but persons on railroad trains are part of the state itself. The *major* was quite as much within legislative attention as the *minor*. The statute was not intended or framed to relieve adjoining owners from diligence in the care of their domestic animals, at risk of danger to railroad trains; or to license negligence to establish cattle markets on railroads. The essential danger of railroads requires diligence on both sides; a high degree of diligence in the management of the road, and at least ordinary diligence on the part of adjoining owners. The rule of absolute liability appears to be as unwise in policy as unsound in legal construction.

The cases of *Pitzner v. Shinnick, Jones v. Railway Co.*, and *Lawrence v. Railway Co.*, overturning one-half of the rule of absolute liability, virtually disaffirmed the whole. They probably prepared the profession for the entire disaffirmance of the rule. They seem to have prepared so intelligent a jurist as the learned judge before whom this cause was tried. His charge disregarded the authority of *Brown v. Railway Co.;* instructing the jury that contributory negligence would defeat the action. It is unnecessary to repeat here what was said on the subject in those cases; showing the unsoundness of the rule in principle, and its inconsistency with the uniform rule in other actions for negligence,

founded upon statutes quite as peremptory and absolute in terms.

The rule can no longer be upheld. The rule of this court must be taken as sustaining the defense of contributory negligence to actions against railroad companies, for injuries occasioned by failure either to erect or to maintain fences on the line of their roads, as in other actions for negligence.

III. Says Mr. Justice PAINE, in *McCall v. Chamberlain*, *supra:* "The only question upon which it would seem there could be any room for doubt is, whether the statute requiring the company to fence was intended merely to regulate the division fences between the company and the adjoining landowners, for the convenience of the latter only, leaving the liability of the company, with respect to all others, as it would have been at the common law; or whether it was designed for the protection of the public generally, whose animals were liable to get upon the track. This question is suggested in the case in 3 Kernan, and the court came to the conclusion that the latter was the object of the statute. That conclusion seems to us more especially true in this state, many parts of which are thinly settled, and where it is almost the invariable custom for the settlers to allow their animals to run at large, fencing only their plowed lands. The rule of the common law requiring every one to fence in his own animals, under pain of their being considered trespassers if they entered even on the uninclosed lands of another, if strictly enforced, is often productive of hardships in a new country like ours. For this reason it has never been adopted in some of the states. *Murray v. R. R. Co.*, 10 Rich. Law, 227; *N. & C. R. R. Co. v. Peacock*, 25 Ala., 229. It has been held to be the law in this state, though it is generally disregarded by common consent in the newly settled part of the state. And this fact, which was undoubtedly well known to the legislature, as well as the frequent hardships resulting from the strict enforcement of the common-law rule, leads our minds

to the conclusion that it was the intention of the statute, in requiring the railroad company to fence its road, to repeal the common-law rule, and to protect not only the adjoining landowners, but the public generally."

Where there is a body of uninclosed land, and a custom of turning cattle upon it to pasture, for a long time, without objection, license might perhaps be implied. But that question was excluded by the court below, and is not here.

But several cases in this court uphold the right to recover, in a case otherwise proper, under the statute, for injuries to domestic animals coming upon a railroad from land on which they were trespassers. *McCall v. Chamberlain, Pitzner v. Shinnick, supra.* As WHITON, C. J., remarks in *Pritchard v. Railway Co.*, 7 Wis., 232, trespassing animals are not outlawed. And if, as all the cases in this court appear to hold, the mere fact that they are trespassers on the railroad itself, will not defeat a recovery, it is difficult to perceive why the fact that they had just before been trespassers elsewhere, should have that effect.

The mere fact, therefore, if the fact sufficiently appear here, that the respondent's cow was permitted to pasture on land which he did not own, would not defeat his action. The true question was, whether the respondent was guilty of contributory negligence in suffering his cow to be at large upon unfenced land. The court below submitted that as a question for the jury. The verdict is, that it was not. And the question for this court is, whether the facts justified the court below in treating the contributory negligence imputed to the respondent as a question of fact; or whether the respondent's act was so manifestly and conclusively negligent, the court below should have withheld the question from the jury, and found the contributory negligence as matter of law. *Langhoff v. Railway Co.*, 23 Wis., 43; *Lawrence v. Railway Co., supra.*

In *Lawrence v. Railway Co.*, it was held to be contribu

tory negligence, in law, to leave cattle, in the morning, at large for the day, without purpose and by mere inadvertence, in midwinter, presumably without food, within seventy rods of a railroad, without fence or obstacle to keep them from it. The facts are perhaps not sufficiently stated in the report. The cattle had been housed that season, were taken out that morning to be watered, and were not put back in their stable, as intended, by apparent forgetfulness. The inclination of the cattle to wander in such circumstances, and the danger of their coming on the railroad, were strong and obvious; and negligence in so leaving them was patent and gross. But perhaps that case went as far as the court would be warranted in going.

The circumstances here are very different. The cow appears to have been left, presumably with other cattle, in summer, on grass-land, some three-quarters of a mile from the railroad; certainly at a comparatively safe distance, and with no apparent temptation to stray so far, or to leave its pasture for the uninviting barrenness of a railroad, without even garbage to prey upon.

The danger to the animal in the former case was close and imminent; in the latter, remote and not apparently probable. An owner of ordinary prudence would not incur the risk of injury in the one case; might well incur it in the other. Negligence in the one case is not open to debate or doubt; in the other, it is manifestly open to both. . Where negligence does not admit of doubt or debate, it is matter of law for the court. Where negligence is a question for doubt or debate, it is matter of fact for the jury. Negligence "may, in general, be said to be a conclusion of fact to be drawn by the jury, under proper instructions from the court. It is always so where the facts, or rather the conclusion, is fairly debatable or rests in doubt." *Langhoff v. Railway Co.*, 19 Wis., 489.

The question is generally a mixed one of law and fact. There may or there may not be a question of fact for the jury.

Each case must be determined by its own circumstances. Courts cannot establish a general rule, determining what is or is not negligence under all circumstances. And when circumstances leave it in reasonable doubt, courts cannot take the question from the jury. In such a case as this, a jury is a far better judge of the question than a court. The question was plainly for the jury, and was properly and fairly submitted to it. And the verdict is conclusive of the fact.

*By the Court.* — The judgment of the court below is affirmed.